J-A09042-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JAMIE FULLERTON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER BAILEY | : | No. 1357 WDA 2025 |

Appeal from the Order Entered September 17, 2025
In the Court of Common Pleas of Allegheny County Family Court at
No(s): F.D. 18-008084-007

BEFORE: NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED: June 30, 2026**

Jamie Fullerton ("Mother") appeals from the September 17, 2025, order denying her request for a final protection from abuse ("PFA")[1] order on behalf of her daughter, R.F. ("Child"), born in September 2017, and against Child's father, Christopher Bailey ("Father"), and dismissing the PFA action.[2] Because Mother waived several of her issues and the reviewable ones are meritless, we affirm.

_____

[1] **See** 23 Pa.C.S.A. § 6101 *et seq.*

[2] Although Mother filed her appeal under the underlying custody docket, which Father initiated, we adopt the caption utilized in relation to Mother's subject Protection from Abuse ("PFA") petition. **See** Pa.R.A.P. 907(a) ("[T]he prothonotary of the appellate court shall docket an appeal under the caption given to the matter in the trial court."); *cf*. Pa.R.A.P. 904(b)(1)("The parties shall be stated in the caption as they appeared on the record of the trial court at the time the appeal was taken.").

The factual and procedural history of this case is as follows. Child is the only biological child of Mother and Father, who never married. Father initiated child custody proceedings in May 2018, when Child was still an infant. *See* Custody Complaint, 5/29/25. "Since [Child] was very young, the parties have engaged in extensive and repetitive litigation ranging from [PFA] petitions to school choice disputes for kindergarten, support proceedings, custody trial[s], and motions involving a variety of court[-]appointed professionals." Trial Court Opinion, 12/15/25, at 2-3. By consent of the parties, the court entered the order governing custody of Child in December 2023 (hereinafter, "the existing custody order"). It awarded the parties shared legal custody, with the exception that Father was granted sole legal custody related to medical decisions. *See* Order, 12/4/23, at ¶¶ 1.1.-1.3. The existing custody order further awarded the parties shared physical custody on a 2-2-5-5-day basis. *See id*. at ¶ 1.4.

Relevant to the instant appeal,

[o]n June 16, 2025, Mother filed a [PFA petition] on behalf of Child against Father. She alleged that Child began exhibiting "odd behaviors" and "making concerning comments" after a visit with Father, and that another child reported that [Child] kissed him and said, "[M]y dad makes me sit on his face and he licks my bum, then I poop, and he licks it." The Office of Children, Youth, and Families ("CYF" or "the agency") was notified and began an investigation. . . .

The [trial court] issued a [t]emporary PFA [o]rder on June 16, 2025, limiting Father to telephone contact initiated by Child [and scheduling a final PFA hearing for June 30, 2025, which the court later continued to August 11, 2025]. That same day, [*i.e.*, June

- 2 -

16, 2025,] an additional [o]rder referred the matter to CYF for investigation. . . .

Trial Court Opinion, 12/15/25, at 7-8.  At the time of these events, Child was approximately eight years old.  Upon petition of Father, on June 23, 2025, the trial court appointed Aimee Burton, Esquire ("Attorney Burton"), to serve as Child's guardian *ad litem* ("GAL").  **See** Order, 6/23/25.  We note that Attorney Burton was familiar with Child and had previously served as GAL in the custody proceedings in this case from February 2022 through approximately August 2024.  **See** Order, 8/13/24, at ¶ 2.

On June 23, 2025, CYF conducted a home visit and preliminary interview of Child.  **See** N.T., 8/20/25, at 19-20, 61-62.  A full forensic interview of Child, which CYF representatives and law enforcement observed, occurred four days later.  **See id**. at 22, 24.  Child made no disclosures of abuse during either of these investigatory interviews.  In early July, CYF met with Father, who denied the allegations set forth in Mother's PFA petition.  CYF found no concerns with Father or his home.  **See id**. at 25-26.  CYF ultimately deemed the allegations in Mother's PFA petition to be unfounded and closed the case later that month.  **See id**. at 23, 26-27, 32-33, 54.  Law enforcement similarly closed their case on the matter.  **See id**. at 23, 26-7.

On or about July 9, 2025, Father served a petition for special relief seeking modification of the temporary PFA order.  **See** Father's Petition for Special Relief to Modify Temporary Protection from Abuse Order, 8/19/25, at 2.  Father's modification petition requested "reinstate[ment]" of the existing

custody order pending a final PFA hearing. *See id*. at ¶ 25. Although Mother apparently tendered a response, it is absent from both the certified record and the docket. *See* Trial Court Opinion, 12/15/25, at 10 (referring to Mother's response). In relevant part, we discern that Mother's response asserted Child was only comfortable discussing the allegations of abuse with her therapist, Melody Caldwell, PsyD ("Dr. Caldwell"). *Id*.

The court conducted oral argument on Father's petition on July 17, 2025, wherein no testimony or evidence was adduced by either party. *See* N.T., 7/17/25, at 2-48. The court held Father's petition in abeyance. *See* Order, 7/22/25.

On July 24, 2025, CYF received a General Protective Services ("GPS") report including allegations of "inadequate physical care, conduct by parents that places the child at risk, behavioral health concerns, [and C]hild sexually acting out." N.T., 8/20/25, at 13-14, 60-61.[3] Upon additional investigation, the agency deemed this report to be invalid and closed the GPS referral at the intake level on August 6, 2025. *See id.* at 33, 38, 54, 75.

---

[3] Additionally, Mother transmitted a petition to, in part, modify the subject PFA petition to include the new GPS report. *See* Trial Court Opinion, 12/15/25, at 14. The trial court ultimately denied this petition. *See* Order, 8/21/25, at ¶ 4.

The court commenced a final PFA hearing on August 20, 2025.[4] Father presented the testimony of April McClure ("Ms. McClure"), the investigator who handled the child welfare referrals in this case. *See* N.T., 8/20/25, at 12. Ms. McClure testified as both a fact witness and an expert witness in "child welfare." *See id*. at 42-43. Ms. McClure testified that after "a full and complete investigation," the allegations concerning Father were deemed unfounded and unindicated. *See id*. at 52.

Mother adduced the testimony of Dr. Caldwell, who testified as a fact witness. *See* N.T., 8/20/25, at 104, 110, 197. Dr. Caldwell testified that she had served as Child's therapist since January 2025. *See id*. at 112. Dr. Caldwell averred that Child had made "disclosures" of "inappropriate contact" between herself and Father in June 2025. *See id*. at 121-22, 183. Over Father's objections, the trial court ultimately qualified Dr. Caldwell as an expert witness in clinical and forensic psychology. *See id*. at 100, 197-98.

On August 21, 2025, the trial court issued an interim order that scheduled an additional day of testimony for September 17, 2025. Although the evidentiary record was still open, the trial court granted Father's petition and restored the parameters set forth in the existing custody order, with a

---

[4] The notes of testimony of this hearing are incorrectly dated August 21, 2025. We cite herein to the notes of testimony using the August 20, 2025 date. The court had originally scheduled the matter for August 11, 2025, but continued it to August 20, 2025 due to GAL's unavailability.

proviso requiring that Father's periods of physical custody be monitored pending the conclusion of the final hearing. *See id*. at ¶¶ 3, 6.[5]

Later that month, the court directed the parties to make Child available on September 4, 2025, so the court could determine (a) whether testifying in open court would cause Child serious emotional distress that would impair Child's ability to communicate, and (b) whether Father's presence would substantially impair Child's ability to testify. After a colloquy with Child via Microsoft Teams on September 4, 2025, the court found Child unavailable to testify under 42 Pa.C.S.A. § 5985.1, because testifying would cause serious emotional distress that would impair reasonable communication. *See* Trial Court Opinion, 12/15/25, at 18-19.

When the final PFA hearing resumed on September 17, 2025, Mother moved for recusal. *See* N.T., 9/17/25, at 4-10. In support thereof, Mother largely assailed the trial court's past working relationship with GAL as a GAL and parent advocate, as well as the allegedly disparate treatment of the parties' experts, Ms. McClure and Dr. Caldwell. *See* Motion for Recusal, 9/17/25, at 1-7 (unpaginated). The trial court denied the motion at the start of the hearing. *See* N.T., 9/17/25, at 4-10.

---

[5] Specifically, the order directed that Father's mother, or another adult approved by the GAL, "physically check in" every three hours and once before bedtime during Father's custodial time. Interim & Interlocutory Order of Court, 8/21/25, at ¶ 6(b)-(c).

Thereafter, Dr. Caldwell testified in her capacity as an expert in clinical and forensic psychology concerning Child's treatment in therapy. *See generally* N.T., 9/17/25, at 19-132. Specifically, Dr. Caldwell noted that Child was suffering from nightmares, bedwetting, and incontinence on a regular basis. *See id*. at 21-22, 29. Dr. Caldwell also expressed concern regarding Child's "precocious puberty" and expression of "sexual themes in play therapy." *Id*. at 24. Finally, Dr. Caldwell related several disclosures Child made regarding Father's behavior, which included claims Father "wipes [Child's] vagina and anus with baby wipes to clean her after she has an accident." *Id*. at 28.[6]

At the conclusion of Dr. Caldwell's testimony, the court indicated to the parties it would entertain motions and inquired whether Father desired to make a "motion as it relates to the burden of proof on the PFA[.]" N.T., 9/17/25, at 133. Father moved for dismissal of the petition "because [Mother] has not met her burden of proving reasonable fear of the child." *Id*.[7] The court, declining to credit Dr. Caldwell's testimony, *see* Trial Court Opinion, 12/15/25, at 33, and, thus, having concluded that Mother "failed to establish

---

[6] Dr. Caldwell detailed her concerns in two letters dated July 13, 2025, and an expert report dated August 20, 2025, which the court admitted into evidence. *See* Exhibits D-E, Exhibit 1.

[7] While Father clearly moved to dismiss the petition based on the sufficiency of Mother's evidence, Father's counsel conflated a motion to dismiss based on sufficiency with a motion for a directed verdict. *See* N.T., 9/17/25, at 133.

sufficient evidence under the PFA Act . . .," granted Father's motion. PFA Dismissal Order, 9/19/25; *see also* N.T., 9/17/25, at 136.[8]

On October 16, 2025, Mother, through new counsel, filed a timely notice of appeal. Mother did not contemporaneously file a concise statement of errors complained of on appeal. *Cf*. Pa.R.A.P. 905(a)(2); 1925(a)(2)(i). By order dated October 21, 2025, the trial court directed Mother to file a concise statement pursuant to Pa.R.A.P. 1925(b). Mother timely complied.[9] Thereafter, the trial court filed a Rule 1925(a) opinion.

On appeal, Mother raises the following issues for our review:

1. Whether the trial court erred and abused its discretion by limiting [Mother's] counsel's ability to qualify Child's treating therapist as an expert until the end of day one of the PFA hearing?

_____

[8] While the court found Mother had not put on sufficient evidence to support the grant of a final PFA order, the court followed Father's counsel's lead by also employing directed verdict language. *See*, *e.g.*, PFA Dismissal Order, 9/19/25.

[9] Although Mother failed to comply with the requirement that a concise statement be filed contemporaneously with a notice of appeal in children's fast track matters, *see* Pa.R.A.P. 905(a)(2), 1925(a)(2)(i), such an oversight does not divest this Court of jurisdiction, but results in a "defective notice of appeal" that must be addressed on a "case-by-case" basis. *In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009). "'The extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules'" and no party has "'suffered prejudice.'" *Id*. (quoting *Stout v. Universal Underwriters Ins. Co.*, 421 A.2d 1047, 1049 (Pa. 1980)). This Court has declined to quash appeals where an appellant failed to comply with these directives but subsequently complied with an order of court directing them to file a concise statement. *See In re Adoption of Z.S.H.G.*, 34 A.3d 1283, 1286 (Pa. Super. 2011) (citing *K.T.E.L.*, 983 A.2d at 747-48). Thus, we will not quash this appeal. *See id*.

2. Whether the trial court abused its discretion throughout the PFA hearing by failing to maintain its impartiality throughout the hearing?

   a. Whether the trial court abused its discretion by not maintaining its impartiality throughout the PFA matter?

   b. Whether the trial court erred by failing to recuse herself from the matter?

3. Whether the trial [court] erred by not permitting tender years hearsay during day one of the PFA hearing during Dr. [] Caldwell's testimony?

4. Whether the trial court erred and abused its discretion by conducting an interview of Child to determine Child's availability to testify without counsel being present?

5. Whether the trial court erred and abused its discretion in consolidating the complete PFA record into the pending custody modification action?

6. In the alternative to issue [five], whether the trial court erred as a matter of law in failing to address Kayden's Law at the PFA hearing, despite essentially consolidating the PFA and pending custody modification matter?

7. Whether the trial court erred as a matter of law and abused its discretion by appointing a [GAL] in the PFA matter?

8. Whether the trial court erred and abused its discretion by allowing the [GAL] to provide unsworn testimony to the court?

9. Whether the trial court erred as a matter of law by failing to provide [Mother's] counsel the opportunity to cross-examine the GAL during the PFA hearing in accordance with Pa.R.C.P. 1915.11-2?

10. Whether the trial court erred and abused its discretion by denying [Mother's] counsel the ability to call [Father] to testify and by *sua sponte* raising a [Fifth A]mendment defense on his behalf?

11. Whether the trial court erred and abused its discretion by suggesting [Father's] counsel move for a directed verdict and then by entering a directed verdict to dismiss the PFA petition when two reasonable minds could differ as to a matter of law whether there was sufficient evidence to grant the PFA?

Mother's Brief at 3-6 (unnecessary capitalization and italics omitted; issues re-ordered for ease of disposition).[10]

Our standard of review concerning a trial court's ruling on a PFA order provides, as follows:

In a PFA action, this Court reviews the trial court's legal conclusions for an error of law or an abuse of discretion. A trial court does not abuse its discretion for a mere error of judgment; rather, an abuse of discretion occurs where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will. Moreover, on appeal, this Court will defer to the credibility determinations of the trial court as to witnesses who appeared before it. It is well[] settled that the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Finally, we review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court.

*Kaur v. Singh*, 259 A.3d 505, 509 (Pa. Super. 2021) (internal citations and quotations omitted).

Mother's first claim for relief pertains to the bifurcation of Dr. Caldwell's testimony as both a fact witness and an expert. As a general matter, the admission of evidence, including expert scientific evidence, is within the

_____

[10] Father and GAL on behalf of Child, filed separate briefs with this Court in favor of the trial court's dismissal of the subject PFA matter.

- 10 -

purview of the trial court's discretion. ***See A.J.B. v. M.P.B.***, 945 A.2d 744, 749 (Pa. Super. 2008); ***see also*** Pa.R.E. 702 ("Testimony by Expert Witnesses").

Mother asserts that the trial court erred by not immediately qualifying Dr. Caldwell as an expert during the August 20, 2025, hearing. ***See*** Mother's Brief at 37-38. Consequently, Mother claims, she "was not able to properly question" Dr. Caldwell. ***Id***.

Before addressing the substance of Mother's issue, we must first determine whether she has preserved it for our review. An appellant must preserve issues for our review by raising them in the trial court. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); ***Commonwealth v. Strunk***, 953 A.2d 577, 579 (Pa. Super. 2008) ("It is well established that trial judges must be given an opportunity to correct errors at the time they are made. [A] party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected.") (internal citation omitted).

Following our review of the record, we conclude Mother has waived this issue. At the hearing, Mother's counsel stated that Dr. Caldwell's proffered testimony was "segmented" because Dr. Caldwell would testify as both a fact witness and an expert witness. ***See*** N.T., 8/20/25, at 104. After Father's counsel declined to stipulate to Dr. Caldwell's expert qualifications, Mother's counsel requested that Dr. Caldwell be permitted to testify first as a fact

witness. *See id*. at 110 ("I would like to proceed with her as [a] fact [witness] first, preserving the right to permit *voir dire* later, and then have that extrapolated into expert testimony at a later date . . ..").

Dr. Caldwell was later qualified, and testified, as an expert witness, over Father's objections, and testified in that capacity on September 17, 2025. *See id*. at 197; *see also generally* N.T., 9/17/25, at 19-132. Crucially, our review of the record reveals no objection from Mother's counsel regarding the preferred order of Dr. Caldwell's respective testimonies. Indeed, as noted above, the trial court permitted Mother to question Dr. Caldwell as Mother herself requested, *i.e.*, first as a fact witness and then as an expert witness on a later date. Mother therefore waived her claim that this procedure was erroneous. *See* Pa.R.A.P. 302(a).

In her second issue, Mother argues the trial court abused its discretion by declining to recuse itself. *See* Mother's Brief at 23-29. We review a trial court's denial of a request for recusal for an abuse of discretion. *See Vargo v. Schwartz*, 940 A.2d 459, 471 (Pa. Super. 2007). Significantly, our review of a trial court's denial of a motion to recuse is exceptionally deferential. *See id*. "We recognize that our trial judges are 'honorable, fair and competent,' and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially." *Commonwealth v. Harris*, 979 A.2d 387, 391-92 (Pa. Super. 2009) (internal citation and quotations omitted).

A trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or the court believes its impartiality can reasonably be questioned. **See In re Bridgeport Fire Litigation**, 5 A.3d 1250, 1254 (Pa. Super. 2010). This Court has further stated:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as [ ] judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

**Commonwealth v. Kearney**, 92 A.3d 51, 61 (Pa. Super. 2014) (quoting **Liteky v. United States**, 510 U.S. 540, 555–56 (1994)) (emphasis omitted).

Mother argues that the court evidenced "clear favoritism to Father and showed clear antagonism towards Mother." **Id**. at 24; **see also id**. at 25. Specifically, Mother maintains that the parties were treated differently with respect to the ease of qualification of their respective witnesses as experts. **See id**. at 24-25. She maintains the trial court was inappropriately stringent with respect to Dr. Caldwell's qualification, but permitted Ms. McClure to be

qualified in a much more straightforward fashion.[11]  Thus, Mother contends that the court abused its discretion in failing to recuse.  *See id*. at 25-29.

The trial court conducted a thorough analysis of the issue at the hearing. *See* N.T., 8/20/25, at 4-10.  The court determined that recusal was not warranted, as follows: "Mother's arguments stem largely from adverse rulings and management of the proceedings, which do not establish bias."  Trial Court Opinion, 12/15/25, at 39 (footnote omitted) (citing *Slusaw v. Hoffman*, 861 A.2d 269, 274 (Pa. Super. 2004) ("Our Supreme Court has held that adverse rulings alone do not establish the requisite bias warranting recusal, especially where the rulings are legally proper.")).  The trial court further reasoned, "Granting recusal on that basis would create an incentive for parties to seek removal of judges based on disagreement with judicial decisions."  *Id*.

We discern no abuse of discretion by the trial court in declining to recuse itself.  As noted above, Mother's primary example of the trial court's alleged bias is its allegedly disparate treatment of the parties' experts with respect to qualification.  *See* Mother's Brief at 24-25.[12]  However, in light of Father's counsel's unwillingness to stipulate to Dr. Caldwell's qualifications as an

---

[11]  Mother further alleges that the trial court inappropriately "instructed" Father's counsel to move for a "dismissal" of the PFA order and "made objections" on Father's behalf.  Mother's Brief at 25.  We address these aspects of Mother's arguments *infra*.

[12] The question of "[w]hether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court[.]" *Wexler v. Hecht*, 847 A.2d 95, 98 (Pa. Super. 2004).

expert, we observe no evident partiality in the trial court's decision to require

Mother's counsel to submit evidence and argument in support of Dr. Caldwell's

*bona fides*. **See Wexler**, 847 A.2d at 98-99 (providing that, when

determining whether a witness is qualified as an expert, the court is to

examine whether the witness has any reasonable pretension to specialized

knowledge on the subject under investigation). We also emphasize that the

trial court ultimately qualified Dr. Caldwell as an expert and she testified

extensively in that capacity. Based upon the foregoing, we find no merit in

Mother's contention the trial court abused its discretion by denying Mother's

recusal motion.

We now turn to Mother's third and fourth claims for relief, which

collectively relate to the admissibility of certain out-of-court statements

attributed to Child, and the arguable applicability of the Tender Years Hearsay

Act, codified at 42 Pa.C.S.A. §§ 5981-5988. **See** Mother's Brief at 34-39.

Section 5985.1 provides, in relevant part, as follows:

**§ 5985.1. Admissibility of certain statements**

**(a) General rule.--**

(1) An out-of-court statement made by a child victim or
witness, who at the time the statement was made was 16
years of age or younger, describing any of the offenses
enumerated in paragraph (2),[13] not otherwise admissible

---

[13] The enumerated offenses include, *inter alia*, those related to sexual abuse
and exploitation of children, and unlawful contact with a minor. **See** 42
Pa.C.S.A. § 5985.1(a)(2).

- 15 -

by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(ii) the child either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness.

\* \* \* \*

**(a.1) Emotional distress.--**In order to make a finding under subsection (a)(1)(ii)(B) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

**(a.2) Counsel and confrontation.--**If the court hears testimony in connection with making a finding under subsection (a)(1)(ii)(B), all of the following apply:

(1) Except as provided in paragraph (2), the defendant, the attorney for the defendant and the attorney for the Commonwealth or, in the case of a civil proceeding, the attorney for the plaintiff has the right to be present.

(2) If the court observes or questions the child, the court shall not permit the defendant to be present.

42 Pa.C.S.A. § 5985.1.

In pertinent part, Mother argues that the trial court erred by: (1) declining to allow Dr. Caldwell to testify, as a fact witness, about Child's out-of-court statements, and (2) conducting an interview of Child without counsel present in alleged violation of 42 Pa.C.S.A. § 5985.1(a.2).

Based on our review of the record, we conclude Mother has failed to preserve these issues for our review because she not only failed to object, but indeed consented, to the rulings she now contests.

With respect to Mother's third issue, we note the following: The applicability of section 5985.1 was first raised after Father's counsel objected during Dr. Caldwell's factual testimony on the grounds that Child's disclosures during her therapy sessions constituted inadmissible hearsay.  *See* N.T., 8/20/25, at 122-25.  The trial court addressed the possibility that Child would testify and the need for a preliminary assessment to determine Child's availability, as follows:

The Court:  [I] might have to have [Child] testify, and you guys can decide -- and it's different from custody, and sometimes what I can do is do an in-camera to determine whether or not the child should testify about these kind of things.  It's not the same kind of in [] camera.  It's basically a preliminary assessment of whether or not we should go further. . ..

*  *  *  *

[Mother's Counsel]: ***We actually agree with Your Honor. . . . The relief I am requesting is for Your Honor to in-camera see the child[.]***

- 17 -

* * * *

| The Court: | Okay. So right now any testimony about what [Child] said will not be allowed. If we get to the point where [Dr. Caldwell] qualifies as an expert, it will be allowed. So skip that part right now. Do you understand why that's hearsay if she's not an expert? |
|---|---|
| [Mother's Counsel]: | **Yes.** |

N.T., 8/20/25, at 122-23, 125, 127 (emphases added).

To the extent that Mother's third issue maintains the court erred by not permitting Dr. Caldwell to testify regarding Child's disclosures on August 20, 2025, she has not preserved this claim for our review. **See** Pa.R.A.P. 302(a); **Strunk**, 953 A.2d at 579. Specifically, the record indicates that Mother failed to enter a timely and specific objection on this ground. To the contrary, as quoted above, the record clearly indicates that Mother supported the trial court's decision to defer a decision regarding Child's availability to testify for the purposes of Section 5985.1. Thus, Mother's third issue is waived.

Regarding Mother's fourth issue, the court's interview of Child without counsel present, the record discloses that, immediately following the August 20, 2025 hearing, the trial court indicated its intent to schedule a separate, *in camera* interview with Child. **See** Order, 8/21/25, at ¶ 2(a) ("The assessment of [Child] to determine whether she would be available to testify shall be scheduled separately from the [final PFA hearing]. Separate [o]rder of [c]ourt to follow."). On August 27, 2025, the court issued an order that provided, in pertinent part, as follows:

- 18 -

AND NOW, this **27th day of August, 2025**, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1.   The parties shall make [Child] . . . available on **September 4, 2025[,] at 2:00 p.m.** to determine the following:

a.   whether the giving of testimony in open court would result in serious emotional distress to [Child] such that Child cannot reasonably communicate; and

b.   whether the presence of Father during [Child's] testimony would cause such distress as to substantially impair Child's ability to testify.

* * * *

3.   **No later than September 3, 2025 at 12:00 p.m., counsel for both parties shall notify the court as to whether they or their clients would want to be present for Child's [i]n [c]amera [i]nterview should Child be deemed available to testify by the [c]ourt.**

4.   If the [c]ourt deems Child to be available to testify **and** counsel and their clients wish to be present for the [*i]n [c]amera* interview, then counsel for both parties and the GAL will be notified by court staff following the [c]ourt's initial assessment of Child.

Order, 8/27/25, at ¶¶ 1, 3-4 (emphases in original).  Thus, the trial court advised the litigants that it would only permit counsel for the parties to participate in the section 5985.1 assessment if the court determined that Child was "available to testify" within the meaning of the statute.  **Id**.  On September 3, 2025, the trial court filed another order that noted, as follows: "**By consent, the parties shall not be present during any portion of [Child's] interview**."  Order, 9/3/25, at ¶ 1(b) (some emphasis in original).

- 19 -

The next day, the trial court held Child's assessment as scheduled. At the beginning of these proceedings, Mother's counsel attempted to participate in the assessment, which was disallowed by the trial court. *See* N.T., 9/4/25, at 3.[14] Following the conclusion of Child's assessment, the trial court met with counsel for both parties. *See id*. at 20-27. During that meeting, the following exchange took place between the trial court and Mother's counsel:

The Court: Any questions, [Mother's Counsel]?

[Mother's Counsel]: I don't have -- I don't have questions except whether or not my e-mail was received asking to be present for the interview?[15]

The Court: Well, I explained that. It may have been received, but it's of no moment because I just explained the rules of law that for that inquiry you could not be present.

Now if I would have found that she was available and we had proceeded with an in-camera for PFAs, yes. But for the piece that I just did, no.

[Mother's Counsel]: *Okay. I understand.*

_____

[14] The notes of testimony of the trial court's September 4, 2025, interview with Child are not included with the certified record. Notably, they are, however, included as a part of the reproduced record Mother filed. *See* R.935a. As the veracity of this transcript is not in dispute, we will rely on the copy contained within the reproduced record. *See Commonwealth v. Barnett*, 121 A.3d 534, 545 n.3 (Pa. Super. 2015) ("While this Court generally may only consider facts that have been duly certified in the record, where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it.") (internal citations omitted).

[15] No emails from Mother's counsel pertaining to Child's assessment pursuant to section 5985.1 are present in the certified record or otherwise reviewable.

*Id*. at 25-26 (emphasis added). Ultimately, the court issued an order determining that Child was unavailable to testify pursuant to section 5985.1. *See* Order, 9/4/25, at ¶¶ 1-3; 42 Pa.C.S.A. § 5985.1(a)-(a.1).

Mother asserts on appeal the trial court erred by not allowing counsel to participate in Child's assessment as required by section 5985.1(a.2) ("Counsel and confrontation"). *See* Mother's Brief at 34-37. However, the record, from which we have liberally excerpted, indicates that Mother failed to lodge a timely and specific objection pursuant to Section 5985.1(a.2) when the trial court denied her request to be present for the assessment. Accordingly, we conclude this issue is waived. *See S.W. v. S.F.*, 196 A.3d 224, 234-36 (Pa. Super. 2018).[16]

In Mother's fifth issue, she argues that the trial court erred when it allegedly "consolidated the PFA matter with the pending custody matter."

_____

[16] This case is analogous to *S.W.*, wherein a trial court concluded that a child witness in a PFA proceeding was "unavailable" within the meaning of Section 5985.1. *See* 196 A.3d at 235 n.1. There, this Court concluded that the appealing party had waived their arguments concerning the court's section 5985.1 analysis by failing to object to, *inter alia*, (1) the trial court's denial of a request to interview the child; and (2) the determination that the child was unavailable to testify. *See id*. at 234. Incorporating the trial court's opinion, we emphasized that "[b]oth the theory as well as the grounds must be raised below if an issue is to be preserved for appellate review; one may not merely preserve the 'grounds' at trial level and, for the first time on appeal, raise 'theories' to support them." *Id*. at 236 (internal citation and quotation omitted). Mother's argument suffers from the same shortcoming as those of the litigant in *S.W.*, namely, that she requested for her attorney to be present but failed to lodge an objection and state the theory in support of the objection.

- 21 -

Mother's Brief at 39. This issue relates to the trial court's orders that "incorporated" the records from the PFA proceedings into the "record for trial in the custody matter." Order, 8/21/25, at ¶ 8; *see also* Order, 9/4/25, at ¶ 6; Order, 8/7/25, at ¶¶ 4-5. As with Mother's previous issues, we must first determine whether she has preserved it for our review.

Mother argues that incorporating the records from the PFA proceedings into the record of the custody proceedings was erroneous and "prejudicial to Mother moving forward in the custody proceedings."[17] Mother's Brief at 40. There is no indication in the certified record, however, that Mother ever objected to the incorporation of the PFA records into the custody record. Mother concedes that she did not raise a contemporaneous objection, but claims she was prevented from doing so by the interlocutory nature of the trial court's orders, as follows: "The [o]rder[s] set forth regarding the incorporation were interim, therefore, Mother could not ***object*** at the time of their issuance." ***Id***. (emphasis added).

Mother, however, conflates the distinct legal issues of appealability and preservation. While interlocutory orders are not generally appealable, it is well-established that a litigant's "failure to file an appeal of an interlocutory order does not waive any objections to the interlocutory order[.]" Pa.R.A.P.

---

[17] We observe that, on July 2, 2025, Father filed a petition to modify seeking, *inter alia*, primary physical custody, which remained pending at the conclusion of the final PFA hearing. ***See*** Petition for Modification, 7/2/25, at ¶ 4.

311(g)(1). Further—and crucially—the mere interlocutory nature of a ruling does not obviate the requirement that a party tender a timely and specific objection. **See**, **e.g.**, **Wayne v. Pennsylvania Nat. Mut. Ins. Co.**, 385 A.2d 591, 592 (Pa. Super. 1978) (holding that appellant waived claim concerning service of an interlocutory order since that claim "was not initially presented to the lower court for consideration"). Accordingly, while the interim orders issued by the trial court which, *inter alia*, incorporated the PFA records into the custody proceedings were interlocutory and, therefore, not immediately appealable, this did not obviate Mother's obligation to object to the ruling to preserve a challenge to it on appeal. **See Wayne**, 385 A.2d at 592; Pa.R.A.P. 341 (providing for appeals as of right from final orders), 311 (providing for appeals as of right for certain interlocutory appeals); 312 (providing that for other interlocutory orders, appeals may be taken by permission); **see also** Pa.R.A.P. 302(a) (requiring issue preservation in lower courts); **Strunk**, 953 A.2d at 579 (finding waiver of unpreserved claims). Based upon the foregoing, we conclude that Mother has waived her argument concerning the incorporation of the PFA record. No relief is due.

In her sixth issue, Mother makes an alternative argument concerning the incorporation of the PFA record into the custody case. Specifically, she asserts that since the trial court allegedly consolidated the PFA matter with

the pending custody matter, it was then required to conduct an analysis pursuant to Kayden's Law. *See* Mother's Brief at 40.[18]

This Court has previously disapproved of Mother's argument in ***Goldner on Behalf of K.M. v. Manigault***, 345 A.3d 1212, 1217 (Pa. Super. 2025), wherein a parent in a PFA proceeding argued that Kayden's Law was applicable "since custody was at issue." As we explained in ***Goldner***, Kayden's Law has no bearing on a PFA petition:

> While PFA proceedings and custody matters frequently overlap, the two are governed by separate provisions of the Domestic Relations Code, namely the PFA Act and the Child Custody Act, respectively. In describing the interplay between the two types of actions, we have explained that [c]ustody wise, a PFA order is not designed to impose anything but emergency relief. . . . Accordingly, in a PFA matter, a court might award custody on a temporary basis so that it may address emergency situations and protect a child until a final custody hearing can be held, when a permanent order can be entered. We have further clarified that since custody matters and PFA actions are distinct, and PFA orders only provide momentary reprieve, a PFA court need not conduct a best interests custody analysis to award temporary custody as a form of relief under . . . the PFA Act.

\* \* \* \*

---

[18] Our General Assembly enacted significant amendments to, *inter alia*, the custody factors "pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as 'Kayden's Law')." ***Velasquez v. Miranda***, 321 A.3d 876, 886 n.6 (Pa. 2024). Specifically, Kayden's Law expands the factors to be considered in the custody court's best interest analysis by requiring the court to give "substantial weighted consideration" to, among other things, the "safety of the child," which is defined as "the physical, emotional and psychological well-being of the child," and any "violent or assaultive behavior committed by a party." ***Id***. In addition to new elements, the language of many of the factors have been substantively revised. ***See*** 23 Pa.C.S.A. § 5328(a)(1)-(2), (2.2)-(2.3), (4), (8). These amendments took effect on August 13, 2024.

> We discern no abuse of discretion or error of law in the trial court's determination that Kayden's Law had no bearing on the resolution of the instant PFA petition. Custody proceedings are separate from PFA matters, which are designed only to implement emergency reprieve until a court can grant permanent relief through a custody action.

*Id.* at 1217-18 (internal citations and quotations omitted). Thus, Mother's sixth issue merits no relief.

In her seventh claim, Mother alleges that the trial court erred by appointing GAL pursuant to Pa.R.Civ.P. 1915.11-2. *See* Mother's Brief at 41-42; *see also* Order, 6/23/25, at 1-2 (appointing GAL pursuant to Rule 1915.11-2). We discern Mother's argument to be that the trial court's appointment of GAL was erroneous because Rule 1915.11-2 should not apply in the context of a PFA case. *See* Mother's Brief at 42 (emphasizing that PFA proceedings are separate from custody proceedings) (citing *Goldner*, 345 A.3d at 1217-18). Thus, Mother asserts the trial court was not permitted to appoint GAL. As a threshold matter, however, our review of the certified record indicates that Mother did not contemporaneously object, or otherwise challenge, the applicability of Rule 1915.11-2 in the trial court. Thus, her argument on this point is waived. *See* Pa.R.A.P. 302(a); *Strunk*, 953 A.2d at 579.[19]

---

[19]We further observe that, contrary to Mother's arguments, this Court has cited Rule 1915.11-2 with approval in the context of PFA appeals. *See*, *e.g.*, ***Washington County Children and Youth Services obo H.B. v. Gallagher***, *(Footnote Continued Next Page)*

In her eighth issue, Mother raises a related challenge to the GAL's testimony and averments in the trial court pursuant to Rule 1915.11-2(e)(1) ("[T]he [GAL] shall participate in court proceedings by attending, and by providing sworn testimony if called to testify by a party or the court. The [GAL] shall not be permitted to provide argument, unsworn opinions, or unsworn testimony to the court."). Specifically, Mother maintains that the GAL inappropriately provided "unsworn testimony and opinion" during the course of the proceedings. *See* Mother's Brief at 42-43. As with several of her preceding issues, however, Mother did not contemporaneously object pursuant to Rule 1915.11-2(e)(1) to this allegedly inappropriate testimony.[20] Thus, this claim is also waived. *See* Pa.R.A.P. 302(a); *Strunk*, 953 A.2d at 579.

In her ninth issue, Mother argues that she was denied the opportunity to cross-examine the GAL as required by Rule 1915.11-2(e)(2), which provides: "If called to testify by a party, the [GAL] shall be subject to cross-

---

332 A.3d 1281, 1286 (citing Rule 1915.11-2 as one of the standards for appointment of the GAL in an appeal from a PFA order).

[20] The only pertinent objection raised by Mother with respect to the GAL's testimony was that the GAL was not a qualified expert and, thus, Mother argued that she should not be permitted to testify regarding certain topics. *See* N.T., 8/20/25, at 163 ("Your Honor, I repeatedly asked that we not have a GAL on this case who is specifically trained in a particular area."). We observe that Mother stipulated to GAL's expertise in child welfare. *See id*. at 41-43. Moreover, Mother has declined to challenge the GAL's qualification as part of her appellate arguments.

examination by opposing parties. If called to testify by the court, the [GAL] shall be subject to cross-examination by any party." Pa.R.Civ.P. 1915.11-2(e)(2). **See** Mother's Brief at 48. As with her other arguments concerning the GAL's involvement in this case, however, Mother did not tender a trial objection concerning the alleged lack of cross-examination, or the applicability of Rule 1915.11-2(e)(2), during the PFA proceedings. This claim is therefore waived. **See** Pa.R.A.P. 302(a); **Strunk**, 953 A.2d at 579.

For her tenth issue, Mother alleges the trial court inappropriately raised the Fifth Amendment protection against self-incrimination on Father's behalf during these PFA proceedings. **See** Mother's Brief at 32-34.[21] Specifically, Mother claims that she "attempted to call Father" as a witness, but was prevented from doing so by the trial court's *sua sponte* invocation of these constitutional protections. **See id**. at 34. She also alleges that the trial court's *sua sponte* objection on Father's behalf violates our precedent in **Stamus v. Dutcavich**, 938 A.2d 1098, 1101 (Pa. Super. 2007) (holding that a trial court impinges upon the role of the litigants by relying upon issues raised *sua sponte* to dismiss the proceedings) (applying **Commonwealth v. Nelson**, 690 A.2d 728, 730 (Pa. Super. 1997)).

Mother's arguments relate to an exchange that occurred after Father made a motion seeking the entry of a directed verdict during the September

_____

[21] **See** U.S. Const. Amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself[.]").

17, 2025 hearing. ***See*** N.T., 9/17/25, at 133. The trial court asked for a response from Mother, which led to the following exchange:

> [Mother's Counsel]: I would respond that the testimony of Dr. Caldwell be taken as the primary evidence in this case. That's the first thing; and, secondly, to the extent that Father were to testify --
>
> The Court: Mr. --
>
> [Mother's Counsel]: Yes. [Father] were to testify, I think that that's relevant in this case, and I would want that opportunity.
>
> The Court: But do you understand the procedural function of a motion to dismiss, the [c]ourt can entertain it at any time?
>
> [Mother's Counsel]: Yes.
>
> The Court: I have created a robust record. It is most appropriate, as [Father's attorney] said, at this stage where the moving party has rested, that's a function of civil and criminal law, a little bit different in criminal, but there would be a motion for directed verdict, but I'm dealing with this on a procedural aspect. Not your feeling that I want to hear him testify. So focusing on the procedural aspect, what is your position? I think if you've said that you believe the case rests on Dr. Caldwell, you believe that is your primary evidence.
>
> [Mother's Counsel]: I do believe that is my primary evidence. I'm just as this point debating on whether I would like to call [Father] myself. So that's what I'm determining at this point in time.
>
> The Court: Well, first of all, he has a right to remain silent under the [U.S.] Constitution.

- 28 -

[Mother's Counsel]: He does.

The Court: If there is any possible criminal exposure, I would not ever allow, even when I had self-represented parties, if there are any allegations that would have any possible criminal exposure, I am not under any circumstances forcing someone to violate their [c]onstitutional rights without them willingly doing so and waiving that knowingly, intelligently and voluntarily.

[Mother's Counsel]: I completely agree with Your Honor and I understand. The only reason I mention it is because [Father's attorney] and I had a discussion outside of this case two days ago, or yesterday rather, where I asked about the procedure, and she had indicated that perhaps she would call him as a witness. I do not --

The Court: Well, whatever you guys did outside, I am now on the record. I am in the courtroom, and I am dealing with based on what is on the record. I have a proper motion, I am considering the motion, and, quite frankly, I am granting the motion. The PFA is dismissed.

N.T., 9/17/25, at 133-36.

The instant case is distinguishable from **Nelson** and **Stamus**. In **Nelson**, the trial court, unprompted, interrupted ongoing testimony at a criminal contempt hearing and, because it independently determined the underlying PFA order invalid on grounds not raised by the parties, dismissed the contempt proceeding. **See Nelson**, 690 A.2d at 728 n.1. In **Stamus**, the trial court, without a motion or request from the parties, *sua sponte*

- 29 -

dismissed an underlying PFA order at a contempt-related proceeding. *See* 938 A.2d at 1098.

Here, the trial court did not invoke the protections of the Fifth Amendment and utilize that law to dismiss the temporary PFA order. Rather, the court merely discussed the constitutional implications of Father's potential testimony. Moreover, Mother never actually attempted to call Father as a witness, nor did the trial court formally preclude his testimony. Based upon the foregoing, we find no merit in Mother's claim that the trial court *sua sponte* invoked the Fifth Amendment on Father's behalf. **Compare** N.T., 9/17/25, at 133-36 **with Stamus**, 938 A.2d at 1098; **Nelson**, 690 A. 2d at 728 n.1. No relief is due.

In Mother's eleventh and final claim for relief, she argues that the trial court erred by entering a directed verdict in favor of Father. **See** Mother's Brief at 29-32.[22] Mother emphasizes that the respective legal standards for

_____

[22] In her eleventh issue, Mother also raises the arguments akin to those presented in her tenth claim for relief, *i.e.*, that the trial court improperly and *sua sponte* raised the issue of a directed verdict on Father's behalf. **See** Mother's Brief at 29-30 (citing **Stamus**, 938 A.2d at 1101; **Nelson**, 690 A. 2d at 730). Our review reveals that the trial court indicated only that would "entertain motions" from the parties and then stated: "[Counsel for Father], do you have a motion as it relates to the burden proof on the PFA?" N.T., 9/17/25, at 133. Thereafter, Father's counsel independently stated: "I do, Your Honor. Assuming that the case of [Mother] has been rested, I would ask for a motion for directed verdict that the PFA be dismissed[.]" **Id**. Based on the same reasoning set forth above with respect to Mother's tenth claim for relief, we observe no merit in Mother's continued reliance upon **Stamus** and **Nelson**.

entering a PFA order and granting a directed verdict are not co-extensive, **see id.** at 31-32, and, in pertinent part, she argues that the trial court violated the applicable legal standard for entering a directed verdict. **See id**. at 32.

Initially, we note, that while the trial court purported to enter a directed verdict,[23] a review of the record shows the trial court did not actually apply the standard for a directed verdict; that is, it did not view the evidence in the light most favorable to Mother in granting a directed verdict. Rather the court denied Mother's petition based on a finding that Mother failed to meet her burden of proof in a PFA proceeding. We explain.

At the completion of Mother's case, the court indicated it would entertain motions and asked Father's counsel whether Father had "a motion as it related to the burden of proof on the PFA." N.T., 9/17/25, at 133. Father's counsel—professing to move for a directed verdict—asked "that the PFA be dismissed

_____

[23] Generally, a directed verdict is only appropriate under two limited circumstances, *i.e.*, where: (1) the movant is entitled to judgment as a matter of law; and/or (2) the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. **See Hall v. Episcopal Long Term Care**, 54 A.3d 381, 395 (Pa. Super. 2012) (citing **Campisi v. Acme Markets, Inc.**, 915 A.2d 117, 119 (Pa. Super. 2006)). A trial court considering a motion for a directed verdict on evidentiary grounds must view the evidence adduced in the light most favorable to the non-moving party. **Lilley v. Johns-Manville Corp.**, 596 A.2d 203, 213 (Pa. Super. 1991) (internal citations omitted). As a general matter, this Court "will reverse a trial court's order granting or denying such motions if we discern an abuse of discretion or an error of law." **Fisher v. American International Industries**, 313 A.3d 1140, 1145 (Pa. Super. 2024) (internal citations omitted).

***because the plaintiff has not met her burden of proving reasonable***

***fear of the child***." ***Id***. (emphasis added). In the order dismissing Mother's

PFA petition, the court likewise stated Mother "failed to establish sufficient

evidence under the PFA Act . . .." PFA Dismissal Order, 9/17/25.[24]

Additionally, Mother's counsel argued, in opposition to Father's motion

to dismiss, that the "primary evidence" in this case was Dr. Caldwell's

testimony, ***see id***., and the court expressly concluded that Dr. Caldwell's

testimony was "not credible." ***See*** Trial Court Opinion, 12/15/25, at 33.

The fact that the trial court made an adverse credibility determination

about Dr. Caldwell and denied/dismissed Mother's petition based on her failure

to meet the burden of proof required by the PFA Act shows that the trial court

denied/dismissed Mother's petition for insufficient evidence rather than

granting a directed verdict. Had the trial court granted a directed verdict, it

would have needed to view the evidence in the light most favorable to Mother,

which the court clearly did not. Thus, notwithstanding Father's counsel's

conflation of two different motions—evinced by counsel's motion to dismiss

based on insufficient evidence, while also asking for a directed verdict[25]—and

---

[24] As was the case at the hearing, the trial court determined Mother failed to meet her burden of proof, but then also indicated it was applying the standard for a directed verdict. ***See*** PFA Dismissal Order, 9/17/25.

[25] Father argues on appeal that the court made credibility determinations and "found that there was no credible evidence of abuse. Put simply, Mother failed to meet her burden." Father's Brief at 21. However, Father continues to
*(Footnote Continued Next Page)*

despite the court's confused, or at least imprecise, statement of the grounds for its ruling, it is apparent that the court weighed Mother's evidence, made a credibility determination, and denied the petition for a final PFA order, and dismissed the action, for insufficient evidence.

It is well settled that this Court may affirm a trial court on any basis. *See Lucas v. Lucas*, 882 A.2d 523, 531 (Pa. Super. 2005); *see also Dimoriaku v. Braye*, 1219 MDA 2025, 2026 WL 1021262 (Pa. Super. 2025) (unpublished memorandum at *5) (applying the "right for any reason" doctrine in a PFA appeal).[26]  Therefore, setting aside the court's imprecision in invoking the directed verdict standard, and relying instead on the court's stated rationale of dismissing the petition based on insufficient evidence, we review the court's dismissal order under the typical standard of review for an order denying a PFA petition.

The legal standard regarding the entry, or denial, of a PFA order is as follows:

> The PFA Act does not seek to determine criminal culpability.  A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence.  A preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, enough to tip a scale slightly.

---

conflate a motion to dismiss based on insufficiency with a motion for directed verdict.  *See id*.

[26] *See also* Pa.R.A.P. 126(b) (permitting the citation of unpublished cases decided on or after May 1, 2019, for their persuasive value).

*E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (internal citations and quotations omitted). We are required to defer "to the credibility determinations of the trial court as to witnesses who appeared before it." *Kaur*, 259 A.3d at 509 (internal citation omitted). The trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *See id*. Finally, we must also review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court. *See id*.

This Court has explained that "[t]he purpose of the [PFA Act] is to protect the victims of domestic violence from the perpetrators of such abuse." *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999) (internal citations omitted). A PFA petitioner must establish that "abuse" occurred by a preponderance of the evidence. *See E.K.*, 237 A.3d at 519; *see also* 23 Pa.C.S.A. § 6102 (defining "abuse").[27]

Instantly, Mother relied almost entirely upon the testimony and reports submitted by Dr. Caldwell to support her position in these PFA proceedings. *See* N.T., 9/17/25, at 133-36 (indicating that Dr. Caldwell's testimony was the "primary" aspect of Mother's arguments and evidence). Our review of the

---

[27] It is unclear from our review of the record which specific subsection Mother relied on below. However, based on the court's adverse credibility determination with respect to Mother's "primary evidence," it is clear the court concluded Mother had failed to meet her burden under any applicable section.

certified record has uncovered no other relevant evidence submitted by Mother in support of a final PFA order. The trial court, however, unequivocally concluded that Dr. Caldwell's testimony and reports lacked credibility. **See** Trial Court Opinion, 12/15/25, at 33, 37. As stated above, the trial court's dismissal of Mother's petition was predicated on a conclusion that Mother had failed to satisfy the preponderance of the evidence standard. **See id**. at 25 (quoting the appellate standard of review for orders denying PFA petitions based on the sufficiency of the evidence); **see also** Protection from Abuse Dismissal Order, 9/19/25, at ¶ 1 ("[Mother] failed to establish sufficient evidence under the PFA Act . . .."); N.T., 9/17/25, at 133-36 (Father moving for dismissal based on a failure to satisfy the burden of proof for a PFA matter and the trial court granting the motion and the court granting said motion).

Based upon the foregoing, the record shows that the trial court clearly rejected the evidence adduced by Mother in support of her position on credibility grounds. Thus, the court concluded that Mother had not met the ordinary burden of proof in PFA proceedings. This Court may not disturb the trial court's credibility determinations. **See Kaur**, 259 A.3d at 509. Therefore, viewing the record under the correct legal standard and in the light most favorable to Father, as the prevailing party, we discern no abuse of discretion in the trial court's order denying her motion for a final PFA order and dismissing the PFA action. **See id**.; **see also E.K.**, 237 A.3d at 519.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 6/30/2026